IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDWARD LINDSEY,                        )
                                       )
                    Plaintiff,         )
                                       )    CIVIL ACTION
v.                                     )
                                       )    No. 10-2439-KHV
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )
_____)

**MEMORANDUM AND ORDER**

Edward Lindsay appeals the final decision of the Commissioner of Social Security to deny disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This matter is before the Court on Lindsey['s] Brief In Support Of The Complaint (Doc. #6) filed December 27, 2010. For reasons set forth below, the Court affirms the Commissioner's decision.

**I.     Procedural Background**

On October 7, 2008, plaintiff filed an application for disability benefits. He claimed that he was disabled beginning December 3, 2004 because of a broken back, degenerative disc disease, spondylosis, spinal column abnormalities, numbness and pain in his feet and legs, erectile dysfunction, nervousness in public places and post-traumatic stress disorder ("PTSD"). The Commissioner denied plaintiff's applications initially and on reconsideration. On October 19, 2009, an administrative law judge ("ALJ") found that plaintiff was not disabled. On July 12, 2010, the Appeals Council denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. **Facts**

The following is a brief summary of the evidence presented to the ALJ.

### A. Plaintiff's Testimony

Plaintiff is 45 years old. Plaintiff previously worked as a corrections officer and in various maintenance and mechanical positions. He has received physical therapy and takes pain medication to relieve his back pain. Doc. 5-4 at 28. Plaintiff testified that his pain increases if he stands or sits in one position for a prolonged period of time. Id. Plaintiff stated that he avoids crowds and has difficulty sleeping due to PTSD. Id. at 29. He testified that he gets "testy" very easily, particularly if someone gets in his personal space. Id. at 30. In 2005, he began taking college classes as a full-time student and earned two associate degrees. Plaintiff lives with his wife and son, who do the cleaning, laundry and other household chores. Id. at 33.

### B. Medical Evidence

In November of 2002, plaintiff injured his back while serving with the United States Army in Iraq. He returned to Fort Sill, Oklahoma where he underwent extensive rehabilitation. Ultimately, the Army discharged him in December of 2004.

Plaintiff has mild degenerative joint disease in his lumbar spine, and cannot bend to or lift from the floor. He has a mildly diminished range of motion in his lumbar spine. He is limited to work at the light level of exertion.

At the hearing, Dr. Larry Kravitz testified as a medical examiner. He stated that due to plaintiff's PTSD, he is limited to no more than very brief encounters with co-workers, supervisors and the public. Id. at 47. He opined that plaintiff's work should be limited to routine, low stress work. Id.

C. <u>Vocational Expert Testimony</u>

The ALJ posed the following hypothetical to Marianne Lumpe, Vocational Expert ("VE"):

> I'd like you to assume that this individual can lift and carry 20 pounds on an occasional basis, 10 pounds frequently. Can stand and walk for at least six hours in an eight-hour day. Can sit for two hours at a time for six hours in an eight-hour day. This individual is prohibited from bending or lifting from the floor. This individual would have the further psychiatric limitations that he can only have superficial contact with the public or supervisors. And can only have a job that is – has a predictable job environment with minimum stress.

Doc. #5-4 at 49-50. Based on this hypothetical, Lumpe testified that plaintiff could not perform any of his past relevant work. She testified that with these limitations, plaintiff could perform work in the national economy as follows:

> [Plaintiff] could perform the job duties of a cashier II. The DOT ["Dictionary of Occupational Titles" number] on that is 211.462-010. . . . Another job that would be appropriate would be routing clerk. And Your Honor, the DOT on that is 222.687-021. . . . Another one would be that of photocopy machine operator. The DOT on that is 207.685-014.

<u>Id.</u> at 51.

### III. **ALJ Findings**

In his order of August 20, 2008, the ALJ concluded in part as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since December 3, 2004, the alleged onset date.

3. The claimant has the following severe impairments: mild degenerative disc disease (DDD) of the lumbar spine; and post traumatic stress disorder (PTSD).

All other impairments alleged by the claimant or mentioned in the medical records are not severe under the Act and Regulations, as they have no more than a minimal effect on his ability to perform basic work activities. * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to [do] the following: lift and/or carry a maximum of 10 pounds occasionally; stand and/or walk for at least 2 hours at a time and for up to 6 hours total in an 8-hour workday; and sit for at least 2 hours at a time and for up to 6 hours total in an 8-hour workday, but with the following nonexertional limitations: no bending to or lifting from the floor; only superficial contact with the public and supervisors; and work must be in a predictable job environment with minimum stress. * * *

6. The claimant is unable to perform any of his past relevant work. * * *

7. The claimant was born on September 15, 1965 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. * * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 3, 2004 through the date of this decision (20 CFR 404.1520(g)).

Doc. #5-4 at 13-18.

## IV. Standard Of Review

The ALJ decision is binding on the Court if supported by substantial evidence. See 42 U.S.C. § 405(g); Dixon v. Heckler, 811 F.2d 506, 508 (10th Cir. 1987). The Court must determine whether the record contains substantial evidence to support the decision and whether the ALJ

applied the proper legal standards. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).

## V. **Analysis**

Plaintiff bears the burden of proving disability under the Social Security Act. Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009). The Social Security Act defines "disability" as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. See 20 C.F.R. §§ 404.1520, 416.920. If a claimant satisfies steps one, two and three, he will automatically be found disabled; if a claimant satisfies steps one and two, but not three, he must satisfy step four. If claimant satisfies step four, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. See Jensen v. Barnhart, 436 F.3d 1163, 1168 (10th Cir. 2005).

Here, the ALJ found that plaintiff has severe impairments including mild degenerative disc disease of the lumbar spine and PTSD. At step four, the ALJ determined that plaintiff could not perform his past work. The ALJ found that claimant had the following RFC:

> lift and/or carry a maximum of 10 pounds occasionally; stand and/or walk for at least 2 hours at a time and for up to 6 hours total in an 8-hour workday; and sit for at least 2 hours at a time and for up to 6 hours total in an 8-hour workday, but with the following nonexertional limitations: no bending to or lifting from the floor; only superficial contact with the public and supervisors; and work must be in a predictable job environment with minimum stress.

At step five, based on VE testimony, the ALJ concluded that plaintiff could perform a significant number of jobs which existed in the national economy, including cashier, routing clerk and photocopy machine operator. The ALJ stated that the vocational expert testimony was consistent with the DOT.

Plaintiff asserts that substantial evidence does not support the ALJ decision because the ALJ did not ask the VE whether her testimony conflicted with the DOT job descriptions and the ALJ did not adequately resolve such conflicts. The Commissioner responds that the ALJ's failure to inquire about potential conflicts was inconsequential because the VE testimony did not conflict with the job descriptions.

When VE testimony and the DOT job description conflict, the ALJ must investigate and elicit a reasonable explanation for the discrepancy before he can rely on the VE testimony. Hacket v. Barnhart, 395 F.3d 1168, 1174-75 (10th Cir. 2005); Haddock v. Apfel, 196 F.3d 1084, 1089 (10th Cir. 1999). "[A]n ALJ has a duty to fully develop the record even when the claimant is represented by an attorney, as in this case. Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within this duty." Haddock, 196 F.3d at 1091 (internal citation omitted). Accordingly, Social Security Regulations provide as follows:

> In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy. We use these publications at steps 4 and 5 to resolve complex

vocational issues.

Social Security Ruling 00-4p ("SSR 00-4p"), 65 Fed. Reg. 75759, 75760 (Dec. 4, 2004). If a conflict exists between VE evidence and information in the DOT, the regulation provides as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying of the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

Id. The regulation imposes an affirmative duty on the ALJ to inquire about actual and apparent conflicts between VE testimony and information contained in the DOT, as follows:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> - Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> - If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Id. The rule also requires the ALJ to explain how he resolved the conflict, regardless how it was identified. Id. at 75760-61. Before he can rely on VE evidence to support a disability determination, the ALJ must:

> - Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the [DOT], including its companion publication, the Selected Characteristics of Occupations Defined in the

Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and

- Explain in the determination or decision how any conflict that has been identified was resolved.

Id. at 75759; see Frazee v. Barnhart, 259 F. Supp.2d 1182, 1197 (D. Kan. 2003).

Here, in ruling that plaintiff was not disabled, the ALJ relied on VE testimony that plaintiff could perform the jobs of cashier II, routing clerk and photocopy machine operator.

The DOT describes these jobs in relevant part as follows:

DOT # 211.462-010 – Cashier II

Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen.

DOT # 222.687-022 – Routing clerk

Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type.

DOT # 207.685-014 – Photocopying-machine operator

Tends duplicating machine to reproduce handwritten or typewritten matter: Places original copy on glass plate in machine. Places blank paper on loading tray. Sets control switch for number of copies. Presses button to start machine which transfers image of original copy onto blank paper by photographic and static electricity process. May clean and repair machine. May receive payment for duplicate copies.

> Important variables may be indicated by trade name of machine tended.

The DOT classifies each of these jobs as "Light Work," which it describes as follows:

> Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT Appendix CIV; see 20 C.F.R § 404.1567(b) (light work involves lifting no more than 20 pounds with frequent lifting or carrying of up to 10 pounds; category applies if job requires good deal of walking or standing, or sitting most of time with some pushing and pulling of arm or leg controls).

Here, the VE provided the DOT numbers for each position which she believed a person with plaintiff's limitations could perform. Because the DOT was the source for the VE's information, the ALJ had no further duty to inquire about potential conflicts. See Gibbons v. Barnhart, No. 03-6021, 2003 WL 22969357, at *4 (10th Cir. Dec. 18, 2003) (where VE testified that plaintiff could perform work in identified jobs and stated that DOT was source of information, ALJ had no further duty to investigate possible conflicts); cf. Haddock, 196 F.3d at 1091 (ALJ must elicit testimony from VE to explain conflicts between VE evidence and information contained in DOT).

Plaintiff asserts several conflicts between the VE testimony and the DOT. First, plaintiff notes that the VE testimony was based on the assumption that plaintiff could stand or walk only six hours in an eight-hour work day. Plaintiff asserts that all three jobs which the VE identified appear

to require the worker to stand for eight hours a day. As noted, however, the DOT classifies each of these jobs as light work. Light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour work day. See C.F.R. § 404.1567(b). Thus, the VE testimony and DOT information as to the requirements for standing do not conflict.

Next, with regard to the VE opinion that the job of cashier would accommodate the limitation of only superficial contact with the public, plaintiff argues that the VE testimony conflicts with the DOT. According to the DOT, a cashier "receives cash from customers or employees in payment for goods or services and records amounts received; recomputes or computes bill, itemized lists and tickets; cashes checks and may make change for patrons." This description does not appear to require the cashier to engage in extended social interactions. Therefore it does not conflict with the VE testimony.[1]

Finally, plaintiff argues the DOT's listed requirements for all three jobs conflicts with the VE testimony, which assumed that work "must be in a predictable job environment with minimum stress." Specifically, plaintiff asserts that because each job requires mathematical calculations in dealing with the public or production requirements, they cannot be classified as jobs with minimum stress. Defendant responds that DOT descriptions of the jobs the VE identified do not include requirements that appear to be "particularly stressful." Doc. #11 at 11. The DOT indicates that the three jobs involve performing similar tasks each day and do not require very complex decisions.[2]

---

[1] The VE also identified two other jobs – routing clerk and photocopy machine operator – which a person with plaintiff's RFC could perform. Plaintiff does not argue that his limitation to "only superficial contact with the public and supervisors" would prevent him from performing these jobs.

[2] In addition, defendant points out that in November of 2008, plaintiff performed mental calculations quickly and accurately. Defendant argues that based on this performance and
(continued...)

See id., citing DOT 222.687-022; 207.685-014; 211.462-010. Other courts have found that a job as a cashier qualifies as a low-stress environment. See Foglesong v. Sec'y of Health & Human Servs., 19 F.3d 1432, 1432 (6th Cir. 1994) (testifying expert concluded that plaintiff could perform large number of low-stress occupations such as cashier); Zokaitis v. Astrue, No. 1:10-CV30, 2010 WL 5140576, at *11 (D. Vt. Oct. 28, 2010) (at step four, plaintiff did not demonstrate that she cannot perform past work as cashier because she failed to establish that past work was not low stress setting); Blackmon v. Astrue, No. 04-1347(CKK), 2010 WL 2607215, at *14-15 (D.D.C. June 30, 2010) (concluding that despite low stress limitation, claimant could perform job of cashier); Iles v. Astrue, No. H-H-09-2861, 2010 WL 2574229, at *2 (S.D. Tex. June 25, 2010) (same); Kendrick v. Barnhart, No. 1:04 CV 0292, 2005 WL 1025777, at * 10-11 (S.D. Ind. Apr. 18, 2005) (same).

The administrative record contains no evidence that the VE testimony and the DOT are inconsistent. Further, plaintiff points to no authority that any DOT requirements for the three jobs which the VE identified conflict with the limitations set forth in the ALJ's hypothetical question. Thus, the ALJ's error in not inquiring about any potential conflicts was harmless. See Poppa v. Astrue, 569 F.3d 1167, 1174 (10th Cir. 2009) (ALJ error in not inquiring about potential conflicts harmless where no conflicts between VE testimony and DOT).

---

[2](...continued)
plaintiff's ability to successfully complete college courses, "it is unlikely that the jobs the vocational expert identified would be more than minimally stressful for [p]laintiff." Doc. #11 at 11.

-11-

**IT IS THEREFORE ORDERED** that Lindsey['s] Brief In Support Of The Complaint (Doc. #6) filed December 27, 2010 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED that the decision of the Commissioner is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).**

Dated this 22nd day of April 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge